# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| LAURIE THOMPSON )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>)<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | Case No.: 3:10-CV-60 JVB |

**OPINION AND ORDER**

Laurie Thompson applied for disability benefits on February 16, 2006, alleging disability because of her multiple sclerosis ("MS"), herniated lumbar disc, neurogenic bladder, and related symptoms. (R. at 12, 14, 71.) Thompson's date last insured was March 31, 2006. (R. at 13.) At the state level, her claim was denied initially on July 7, 2006, and upon reconsideration on November 6, 2006. (R. at 12.) Thereafter, Thompson requested a hearing in front of an Administrative Law Judge ("ALJ"). (*Id.*) After Thompson filed a timely request for reconsideration, the Appeals Council denied review; thus, the ALJ's decision became final. (DE 14 at 1.)

The ALJ determined that Thompson is not disabled because: (a) she could perform her past relevant work as a customer service representative as she preformed the job, and alternatively (b) through her date last insured, she could perform jobs that existed in significant numbers in the national economy. (R. at 21–22.) In this appeal Thompson argues: the ALJ erroneously discounted the opinion of her treating physician, Dr. Paula Toth-Russell; the ALJ gave Thompson's testimony too little credibility; and the ALJ overlooked obvious conflicts in the

testimony of the Vocational Expert ("VE"). (DE 14 at 19–24.) Because the ALJ failed to recontact Thompson's treating physician—despite identifying several ambiguities in Dr. Toth-Russell's submissions—the Court concludes that substantial evidence does not support the ALJ's decision. Therefore, the Court vacates and remands this case to the Agency.

**A. Facts**

Born April 4, 1970, Thompson was diagnosed with MS following the birth of her son in 1999. (R. at 17, 68.) Since 1990, Thompson has worked as an X-ray technician, an X-ray technician and office manager, a customer service representative, and an administrative assistant. (R. at 72–73.) Thompson was terminated February 1, 2002, when her employer reorganized and her local office closed. (R. at 72.) Although Thompson volunteers at her son's school, she has not engaged in any substantial gainful activity from February 2, 2002, through her date last insured. (R. at 14, 138.)

At step two, the ALJ concluded that Thompson has the following severe impairments: multiple sclerosis, degenerative disc disease, and neurogenic bladder. (R. at 14.) Thompson states that she has extreme fatigue and lacks energy, she must lie down every day, she has difficulty walking, and she needs help with child care. (R. at 17.) The ALJ agreed that Thompson's medically determinable impairments "could reasonably be expected to cause the alleged symptoms." (*Id.*)

When evaluating Thompson's mental impairments, the ALJ determined that "considered singly and in combination, [these impairments] d[o] not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and [are], therefore, not severe impairments." (R. at 14.) To support this conclusion, the ALJ evaluated the four broad functional

areas set out in section 12.00C of the Listing of Impairments for mental disorders and Thompson's responses about her ability to function in each. (R. at 15–16.) The ALJ also examined the medical report of Dr. Utz, the state agency's psychologist. (R. at 15, 263–66.) Dr. Utz estimated Thompson's GAF score at 70.[1] (R. at 15.) Because Dr. Utz's report was consistent with the medical evidence throughout the record, the ALJ gave it significant weight. (*Id.*)

At step three, the ALJ concluded that Thompson does not have an impairment or combination of impairments that meet or medically equal the Agency's Listing of Impairments. (R. at 16.) This was because the record lacked any findings by a treating or examining physician, or the results of any diagnostic or imaging test, to support such a finding. (*Id.*) Through Thompson's date last insured, the ALJ found she retained the residual functional capacity to "perform sedentary work as defined in 20 CFR 404.1567(a)" with the following limitations: she could "never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; must avoid concentrated exposure to extreme cold and heat, wetness, humidity and noise; and, must avoid even moderate exposure to hazards." (*Id.*)

Despite opining that Thompson's impairments could reasonably produce the alleged symptoms, the ALJ concluded that Thompson's description of "the intensity, persistence and limiting effects of these symptoms prior to the date last insured" was "not persuasive to the extent the statements are not supported by the medical and other evidence of record." (R. at 17.) In short, the medical record did not support Thompson's allegations that her impairments were disabling before March 31, 2006. (*Id.*) The ALJ indicated that the medical record contradicted Thompson's testimony that she received annual infusion treatments for her MS from the time of her diagnosis until 2007. (*Id.*) The record also revealed that Thompson only met with Dr. Toth-

---

[1] "GAF scores are helpful in determining a claimant's level of functioning. They are a numerical expression of the physician's overall assessment of a claimant's psychological, social, and occupational limitations." *Milliken v. Astrue*, No. 08-C-50144, slip op., 2009 WL 3764100, at *12 (N.D. Ill. Nov. 9, 2009) (citation omitted).

3

Russell once or twice a year before her insured status lapsed, and some of Claimant's medical records indicated her condition was stable. (R. at 17–18, 176–77, 179–80.)

The 2004 report of Thompson's other physician, Dr. Langheinrich, showed that she responded well to epidural steroid injections and the treatment "significantly helped with her pain." (R. at 18, 153–54.) The ALJ next discussed the findings of Dr. Pai—Thompson's pain specialist who noted that she experienced good pain relief following steroid injections. (R. at 19.) The record further shows Claimant visited a urologist, Dr. Delany, once in 2001 for her bladder condition. (*Id*.) Thompson did not see Dr. Delany again until May 11, 2004. (*Id*.) Only after her MS flare up in February 2006 did Thompson again seek Dr. Delany's care. (*Id*.) On March 23, 2006, Dr. Delany recorded that Thompson had not been on any bladder medication in the six months preceding her visit; however, as of that date, Dr. Delany did re-start her on anticholinergic medication. (R. at 19, 211.)

Finally, in forming Thompson's RFC, the ALJ evaluated the report of the Agency's consultative examiner, Dr. Inabnit. (R. at 19–20.) Dr. Inabnit indicated that Thompson was in physical therapy twice a week following her February 2006 MS exacerbation. (R. at 19, 222.) He also attested that Thompson had no limitations in her range of motion, her gross motor skills were intact, she could ambulate without her cane with a slow and purposeful gait, and she had a grip strength that was normal at a 4/5. (R. at 19, 233.) Dr. Inabnit concluded that the IV steroid treatment improved Thompson's symptoms. (R. 222–23.) On the basis of the medical records and evidence, the ALJ noted that Thompson's February 2006 flare up seemed to be her only significant exacerbation between the alleged onset date and the date last insured. (R. at 19–20.)

At step four, after examining the record, Thompson's RFC, and questioning a VE, the ALJ found that Thompson was capable of undertaking her past relevant work as a customer service

representative, as she performed the job. (R. at 21.) The VE discounted the remainder of Thompson's other past relevant work because they are categorized under the light exertional level. (R. at 21, 429–430.) Notably, the Dictionary of Occupational Titles lists customer service representative as a light exertional job. (R. at 21.) However, the ALJ indicated that Claimant performed her customer service job in a seated position answering telephone calls while using a headset. (R. at 21, 413.)[2] Thompson indicated that this was a part time job for thirty hours a week. (R. at 138.) Only thirty minutes of each workday required her to walk; she remained seated for the rest of the day. (*Id.*)

For the step five analysis, the ALJ posited a hypothetical question to the VE to determine if there were any unskilled entry-level jobs for a person with Thompson's restrictions. (R. at 430.) The VE responded that this hypothetical person could work as a cashier, an appointment clerk, or an office helper. (*Id.*) The VE opined that the use of a cane to ambulate would not interfere with the hypothetical individual's ability to do any of the previous jobs. (R. at 431.) The VE also testified that, if the ALJ found Thompson to be completely credible, her extreme fatigue symptoms would limit her ability to perform any type of sedentary work. (*Id.*) The ALJ concluded that the VE's testimony was "consistent with the information contained in the Dictionary of Occupational Titles" and demonstrated Thompson's ability to successfully adjust to other work in the national economy. (R. at 22–23.)

**B. Standard of Review**

The Social Security Act authorizes judicial review of final decisions made by the Social Security Agency. 42 U.S.C. § 405(g). Upon judicial review, the court will only consider whether

---

[2] At her hearing, Claimant testified, "I was a customer service rep, so I would be sitting for long periods of time, answering the phone. You have a headset and the call just comes in to you. You hear a little beep and then they're on the line." (R. at 413.)

5

the ALJ's findings are supported by substantial evidence and made under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). In issuing an opinion, the ALJ must, at minimum, state an analysis of the evidence so a reviewing court can make an accurate decision. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Although an ALJ is not required to address all the evidence, "the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004). In determining whether the ALJ has satisfied this burden, the court will not re-weigh evidence or make decisions of credibility. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

If the ALJ commits an error of law, reversal is "required without regard to the volume of evidence in support of the factual findings." *Binion ex rel. Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997) (citation omitted). An ALJ commits such an error if he fails to comply with the Agency's regulations and rulings. *See Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991).

**C. Disability Standard**

To qualify for Disability Insurance Benefits a claimant must establish that he or she suffers from a disability under the terms of the Social Security Act. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2006). The Social Security Administration established a five step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski*, 245 F.3d at 886. A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**D. Discussion**

**(1)** ***The ALJ Improperly Evaluated the Opinion of Dr. Toth-Russell***

The ALJ has the responsibility to develop a complete medical history. 20 C.F.R. § 404.1512(d) (2010). Under SSA regulations, opinions from a claimant's treating physicians are entitled to special consideration. *See* 20 C.F.R. § 404.1527(d)(2) (2010). If such an opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the case record, the ALJ must give it controlling weight. SSR 96-8p; *see Apfel*, 227 F.3d at 870. Even if the ALJ finds that a treating source opinion does not meet the standard for controlling weight, he may not simply reject it. SSR 96-2p. Rather, he must determine the weight to give the opinion by considering various factors,

including the length, nature and extent of the treatment relationship; the degree to which the opinion is supported by the evidence; the consistency of the opinion with the record as a whole; and whether the doctor is a specialist. *See* 20 C.F.R. § 404.1527(d) (2010). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p. Regardless of the weight the ALJ elects to give the treating source opinion, he must always "give good reasons" for his decision. 20 C.F.R. § 404.1527(d)(2) (2010). "[I]n some cases the ALJ may be required to re-contact the treating source if the report contains insufficient information for the ALJ to determine whether the claimant is disabled." *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1059 (E.D. Wis. 2005) (citing 20 C.F.R. § 404.1512(e); SSR 96-5p).

Here, the ALJ improperly disregarded his obligation to "seek additional evidence or clarification from [Claimant's] medical source when the report . . . contains a conflict or ambiguity that must be resolved" or lacks all the necessary information. (R. at 20); *see* 20 C.F.R. § 404.1512(e)(1) (2010); SSR-96-5p ("For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us."). Dr. Toth-Russell's letter indicated that Claimant's ailments cause her pain and paresthesias in her limbs, limit her ability to walk, occasionally cause her to fall, and fatigue her. (R. at 271.) Dr. Toth-Russell further noted that these symptoms were limiting to the point where Claimant cannot sustain an eight-hour work day and cannot perform tasks that require any degree of standing or repetitive motion. (R. at 20, 271.)

The ALJ concluded that Dr. Toth-Russell's opinion was not entitled to controlling weight for several reasons; however, these reasons are deficient. (R. at 20.) First, the ALJ opined:

> It is difficult to determine the exact period of time covered by Dr. Russell's opinion that the claimant cannot work full-time. Clearly, it does not cover the entire period of treatment since Dr. Russell said that she has treated the claimant since 1998, but the evidence shows that the claimant worked full time in 1998 and 1999 based on the claimant's testimony and her earnings record.

(*Id.*) Next, the ALJ criticized the letter because it was not written until February 2007, nearly eleven months after Claimant's date last insured. (*Id.*) The ALJ also noted that the letter did not discuss how Claimant's condition worsened as time progressed, up until her date last insured, nor did it mention how frequently Claimant's MS symptoms arise. (*Id.*)

The fact that the ALJ indicated it was "difficult to determine the exact period of time covered by Dr. Russell's opinion" reveals the presence of an ambiguity that the ALJ was required to resolve. *See* 20 C.F.R. § 404.1512(e)(1) (2010). The timeframe the letter covers is especially important, as the record shows Claimant suffered a serious, five week long MS flare-up from February to March 2006—mere weeks before her insured status lapsed. (R. at 14, 18); SSR 96-2p. Likewise, the ALJ made no effort to recontact Dr. Toth-Russell to explain the ambiguity surrounding the frequency and severity of Claimant's MS flare-ups. (R. at 20); *see Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) (holding that the ALJ should have contacted the plaintiff's doctor and asked for "more detail regarding the frequency" of plaintiff's seizures). Had the ALJ done so, Dr. Toth-Russell could have readily clarified both issues. (R. at 20, 271); *see* SSR 96-2p ("Also, in some instances, additional development required by a case . . . may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking . . . .").[3]

Last, the ALJ attempted to accommodate Dr. Toth-Russell's opinion "that the claimant could not retain a position that required standing . . . by reducing the claimant's exertional level from

---

[3] SSR 96-2p continues: "In such instances, the treating source's medical opinion will become controlling if, after such development, the opinion meets the test for controlling weight."

the light exertional level determined by the state agency physicians (Exhibit 13F) to the sedentary exertional level." (R. at 20.) However, after examining Exhibit 13F, the Court notes that the state physicians did not find that the Claimant was capable of working in a light exertional category; rather, more akin to Dr. Toth-Russell, the state report concludes that Claimant can only work at a sedentary level. (R. at 242.) The state doctor indicated Claimant may only stand two hours in an eight hour workday and may only sit for six hours in an eight hour workday. (*Id*.) As discussed in SSR 83-10, these restrictions on the Claimant qualify her for only sedentary work. *See* SSR 83-10. Thus, the ALJ's failure to develop the treating physician's opinion, coupled with the ALJ's improper evaluation of the state physician's assessment, demonstrate that the ALJ's RFC analysis is not supported by substantial evidence.

**(2)** *The ALJ Improperly Evaluated the Credibility of Claimant's Testimony*

An ALJ's credibility finding is entitled to "considerable deference" and will only be overturned if patently wrong. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citation omitted). "This deferential standard acknowledges that the reviewing court does not have the opportunity to hear and see witnesses, as the ALJ does." *Conley v. Astrue*, 692 F. Supp. 2d 1004, 1008 (C.D. Ill. 2010) (citing *Sims v. Barnhart*, 442 F.3d 536, 537–38 (7th Cir. 2006)). The ALJ must consider the claimant's level of pain, medication, treatment, daily activities, and limitations and must justify the credibility finding with specific reasons supported by the record. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); 20 C.F.R. § 404.1529(c) (2010); *see* SSR 96-7p. An ALJ may find that an individual's statements are "credible to a certain degree." SSR 96-7p.

Again, the ALJ found Claimant's impairments could "reasonably be expected to cause the alleged symptoms." (R. at 17.) However, the ALJ further noted that the Claimant's statements

"concerning the intensity, persistence and limiting effects of theses symptoms prior to the date last insured are not persuasive" because they were not supported by the medical or other evidence within the record. (*Id*.) In support of this conclusion, the ALJ evaluated: (a) Claimant's need for help around the household with chores and her ability to drive; (b) the exacerbations of Claimant's MS symptoms and how long they last; (c) Claimant's medication and medical treatment, including the fact the record failed to support the Claimant's testimony she received annual infusion treatments for her MS from 1999 to 2007; (d) Claimant's need to lay down, walk with a cane, her ability to deal with her blurred vision, and her ability to self-catheterize; and (e) other factors such as how frequently Claimant visited her doctors and those physicians' notes documenting Claimant's various conditions. (R. at 17–20.) However, as discussed above, the ALJ failed to resolve crucial ambiguities—ambiguities closely linked to the intensity, persistence, and limiting effects of Claimant's symptoms—in the letter from Claimant's treating physician. The Court concludes that this error affected the entire credibility analysis. On remand, the ALJ shall conduct a new credibility determination for the Claimant after clarifying Dr. Toth-Russell's opinion. *See Washington v. Astrue*, No. 09-CV-4484, 2010 WL 3516114, at *16 (N.D. Ill. Sept. 1, 2010) (ordering a new credibility analysis after concluding that the ALJ improperly assessed the plaintiff's testimony about his symptoms).

**(3)** *The ALJ Overlooked Obvious Conflicts in the Testimony of the VE*

"SSR 00-4p requires an ALJ who takes testimony from a vocational expert about the requirements of a particular job to determine whether that testimony is consistent with the Dictionary of Occupational Titles." *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006); SSR 00-4p. This duty "extends beyond merely asking the VE whether his testimony is consistent

with the DOT." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). Indeed, SSR 00-4p imposes an additional duty on the ALJ to elicit a reasonable explanation from the VE if there is an apparent unresolved conflict between the VE's statements and the DOT. SSR 00-4p. An ALJ "must resolve this conflict before relying on the VE['s] . . . evidence to support a determination or decision that the individual is or is not disabled." *Id*. The validity of a VE's testimony depends on whether the ALJ accurately described the claimant's condition to him. *See Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004).

Claimant argues that the ALJ's step five analysis was flawed for two reasons: (a) when asked about unskilled entry-level jobs for a hypothetical person with Claimant's limitations, the VE responded by suggesting an appointment clerk position (DOT 237.367-010)—a semi-skilled job—despite the fact that the VE did not discuss the transferability of Claimant's skills; and (b) the VE stated such an individual could be an office helper (DOT 239.362-014), a job categorized in the light exertional category, despite the fact the ALJ limited Claimant to sedentary work only. (DE 14 at 23); *see also* (R. at 430.) As the Court has already determined that the Claimant's RFC was improperly composed, a fresh analysis of the Claimant's ability to engage in jobs that exist in significant numbers in the national economy is warranted. The ALJ will likely need to ask new hypothetical questions covering the new limitations, if any, that Claimant is found to have. *See Gorman v. Astrue*, No. 5:08-cv-0251, 2009 WL 4884469, at *11 (N.D.N.Y. Dec. 10, 2009) ("[T]he RFC was necessarily flawed because of errors in the ALJ's application of the treating physician rule . . . . Thus, the hypothetical given to the VE is also necessarily flawed."). Similarly, the Court notes that its reasoning applies to the ALJ's flawed step four hypothetical questions and the VE's opinion that Claimant could still perform her past relevant work. On remand, the ALJ should revisit his reliance on the VE's testimony based on any changes to

Claimant's RFC and, if necessary, obtain updated VE testimony. *See Young*, 362 F.3d at 1004–05 (noting that when an RFC is deficient, the hypothetical questions an ALJ poses to a VE are generally deficient as well; accordingly, the ALJ's conclusion that a claimant can adjust to other work in the national or regional economy is likewise invalid); *Martinez v. Astrue*, No. 2:09-CV-62-PRC, 2009 WL 4611415, at *16 (N.D. Ind. Nov. 30, 2009) ("Because the Court has determined that Plaintiff's RFC must be reconsidered, the Court will also remand for the ALJ to repose the hypothetical, taking account of all of Plaintiff's limitations, to the VE.").

**E. Conclusion**

The Court VACATES and REMANDS this case back to the ALJ for further consideration as stated in this Opinion and Order.

SO ORDERED on January 13, 2011.

   S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE